Okay, um, Ms. Barrow. May it please the Court, my name is Lindsay Barron and I represent Appellant Abdoulaye Barry. Every criminal who exercises their constitutional right to hold the government to its burden knows that there will be a penalty for going to trial. They know that their sentence is going to be longer than it would have been otherwise had they pled guilty. But no defendant anticipates that the entire sentencing regime is going to be different for them than from their co-defendants who participated in the exact same conduct. But that's what happened here. The government asked for and the district court imposed a different methodology for calculating loss for Mr. Barry than it did for his co-defendants and that led to a procedurally and substantively unreasonable sentence. So what did the court do? First of all, it made a mistake of law. And this is the universe. So the parties debated should Mr. Barry be held accountable for relevant conduct, for the acts of the other people named in the conspiracy. There was evidence at sentencing and then the district court made this statement. This is the universe of its findings. I find that the government did prove a conspiracy existed and the jury obviously did agree to that. So I find that in this case, conspiracy, which I find equates to jointly undertaken criminal activity and there's the mistake. Not that itself is error. Yes, Your Honor. It's... So the district court just stopped making specific findings about this defendant's scope of participation in unlawful activity. That... And our precedents make clear you have to make findings about that. You do. There absolutely have to be clear findings particularized on the record. But the district court, as I think you just noticed, the district court made a fundamental error of law. The commentary to the guidelines makes very clearly that conspiracy doesn't necessarily mean jointly undertaken activity, which is why those particularized findings are required. And so I think the government agrees that those findings weren't made here. And so then the government points to Pierre that even if the court didn't make those findings, does the record still support the decision that my client should be held for relevant conduct? And that standard is preponderance. Is there a preponderance of the evidence to show that he, that the activity of the other people was within the scope of the conspiracy he agreed to and that their actions were reasonably foreseeable to him? Yes. And his connection to his co-conspirators' activity is more tenuous when it comes to the accounts on which he was a secondary member, right? I mean, there's some of these where it's not clear that he would have necessarily visited, for example, Sam's Club with any of his co-conspirators when they were opening those accounts. I think, Your Honor, that's true for both the accounts that he was primary and for the accounts that he was secondary. So let's look at the government's evidence. And reasonable foreseeability and scope kind of blend together on this point. All you have to be right, though, is about the secondary, right? Because then if the district court didn't make that scope-particularized finding, then that's enough to vacate and remand trial. That's correct, Your Honor. That's correct, Your Honor. And that's why I made the hub-and-spoke argument, because the evidence at trial proved a hub-and-spoke. We've got this one person, what Mr. Berry testified at trial, what the government did not disprove. And remember, the district court did not take, did not, the government asked that he be given a trial penalty for giving false testimony, and the district court turned that down. So he testified that he worked with one person. And Sion Bestman, who is a defendant in this case, pled guilty. He didn't testify in this case, but he also gave the government the exact same statement that he worked with one person. And that person would meet them in the parking lot, would give them the cards, and then he would go in. So can't a fact finder simply disbelieve that story? It's obviously not the government's burden to disprove it. It's the government's burden to prove beyond a reasonable doubt that the defendant committed the crime. I understand that, Your Honor. And so a fact finder could disagree with that, but here's what's interesting. It doesn't appear that the jury did discredit that, and the evidence of that is in its verdict. It acquitted my client of two counts related to an instance of going in Sam's Club, which the government charged as being my client. I made the argument to the jury that the person in the picture was not my client. I noted differences in physical stature, differences in skin tone, and the jury agreed with me. How we know the jury did not see that as jointly undertaken activity? It was charged as aiding and abetting. The jury was given an aiding and abetting instruction. So even if the jury didn't think that was my client going into Sam's Club, it clearly didn't think my client was acting in concert with whoever did. And so even the jury seemed to discredit this theory that my client is working with these other folks. He's clearly working with somebody. He admitted to that. That's how he was convicted of conspiring with at least one other person, which is all the jury had to conclude. But the question is, is there proof that he's working with those other people? So what the government has offered is really two things. The testimony of the manager of the Sam's Club up in Alpharetta. He testified that in order to be added to a card, you had to go in with someone else. So the government showed, and we don't disagree, that my client was added to two memberships, the Dominick Tobacco Club and the Dominick Tobacco Shop and the Sawheelie Smoke Shop. As a secondary member, if we credit Mr. Mayick's testimony, which I think the court has to do, the problem, though, is that we don't know who that primary person was. To this day, the government doesn't know who it is. Those accounts were opened. Those are some of the first accounts that were opened. And we don't know who that person is. Since they literally have video surveillance of everything that happened in this conspiracy, you have a picture of my client every time an account was opened. There's no one with him. They don't have a picture for whoever opened that account originally. And what's important is that if it was one of the other five defendants that did it, we would have their picture because there's pictures of them all over the evidence. They would have made that connection. They never did. So we never know. We still don't know who opened that account. And so that is consistent with his testimony that he conspired with someone. That has never been in dispute. But was it reasonably foreseeable to him that these other people were using cards? And this is where the government's evidence really breaks down. And this is why the government correctly noted that it needed to revise its briefs. It originally claimed that my client would have been with these other people when they were added to his account. The government now acknowledges that these other people were never added to his account. They just used those cards. But here is what's missing. If you're prosecuting this case and you want to show that these people are all working together, that they know each other, you're going to, somewhere in these hundreds of pictures of video surveillance, you're going to be able to say, well, here they are, at least in the same store. If not at the same time, if they're passing cards in the parking lot, then maybe you see them 20 minutes apart inside. None of that evidence was there. The government didn't even think to get a warrant for historical cell site data, which would have laid this to rest. Are these people in the same vicinity at the same time? None of that. But the killer is that you've got five people who pled guilty before my client went to trial and not one of them was called in to say, yeah, I know him. I worked with him. We conspired together. We passed cards in the parking lot. There is no evidence to suggest that my client was passing cards with anybody. Is it a plausible theory? Sure. Does the preponderance of the evidence support that? Not even close. It's actually more plausible that what my client told the government and what Sion Bessman told the government is true, that they were working with someone, that someone was giving them the card. It was the person that they met in the parking lot. My client knew him as John. Sion Bessman knew him as Cash. Who knows what his real name is? Maybe he's the guy that opened the Dominick tobacco shop account. I don't know. They don't know. But by a preponderance of the evidence, the government has fallen short in showing that it was reasonably foreseeable to my client that these other people were working in tandem with him. We also know that the district court didn't even believe that because when it sentenced these people after the trial of my client, it only held them accountable and the government only asked for accountability for their personal conduct. The guidelines are clear that 1B1.3, the judge shall impose loss, shall calculate loss according to everyone whose conduct was within the scope and was reasonably foreseeable. So the government's theory here is that they were all in a jointly undertaken activity, but my client's the only one who knew about it. That doesn't make sense. If you want to reward people who plead guilty, do it with a variance, but don't manipulate the guidelines because it renders the guidelines meaningless. That's what happened here. Thank you, Your Honor. Thank you, Ms. Merrill. Ms. Sanders. Good morning, and may it please the Court. Erin Sanders on behalf of the United States. Your Honors, the district court did not clearly err in including the relevant conduct involving the stolen credit cards and Mr. Berry's loss. The district court failed to make the correct findings. The district court did fail to make the individualized findings, Your Honor, and the government has recognized that. But this Court and Pierre and Petrie have held, and in other cases too, time and time again, that that failure, as long as the record supports the district court's loss determination, this Court will affirm. And that's what the Court should do here, and I want to back up to Chief Judge Pryor, your statement earlier or a question to Ms. Barron about the district court and there being a misstatement of the law, which Ms. Barron argued. That's not what happened here. We have to look at the context. The Court made very short, a very short statement, which Ms. Barron gave earlier, but the background context there is extremely important. The court, district court, had heard a three-day trial. The parties argued these very issues, the relevant conduct, the applicable law, and the standards under relevant conduct in lengthy sentencing memos. There was a lengthy sentencing hearing. The court heard all of that and considered it and then found that in this case, in this case, it's not going to be true in every case, the conspiracy equals relevant conduct. That is not what the government is saying, nor does the government believe that. But the court, the district court was correct that in this case, the conspiracy evidence that she heard at trial and that was argued at sentencing did equate to jointly undertaken activity and that does happen sometimes. Let's talk about his connection to his co-conspirators activity for accounts on which he was a secondary member. Yes, sir. So, Fernandez testified Barry was a secondary member on the Dominick Tobacco Shop account. DeAnna Bestman and is it Lee, L-Y, how do y'all say it? Yes, your honor, DeAnna Lee. Were also secondary members and the Sewally Smoke Shop account, Lee, DeAnna, and DeAnna Bob were also secondary members. Testimony wisely, the Walmart investigator confirmed that secondary membership cards were issued to Barry under aliases for the Tobacco, Dominick's Tobacco Shop and Sewally Smart Shop accounts. But, here's the problem, I see it. The primary member on those accounts was not a charged co-conspirator. So, Barry did not necessarily visit Sam's Club with any of the charged co-conspirators with respect to these accounts. Not true, your honor. The record shows, based on Exhibits 103 and 702, that Co-Defendant Diallo was the primary member on the Sewally Smart Shop. What about the Dominick? The Dominick Tobacco Shop, that is unclear and there was not testimony on who that primary member was. So, we don't know if it was a conspirator or not. On the Dominick Tobacco Shop, but we do on the Sewally Smart Shop. It's the same picture. The same picture of Co-Defendant Diallo taken as the primary member on those membership accounts at Government Exhibit 103 is the same picture used of Co-Defendant Diallo in Government Exhibit 702. What about Ali Mubah? Barry and Ali Mubah both made purchases under the Food Portable Market accounts, but neither was a member of that account. Correct, your honor. So, the evidence leaves open the question whether Barry even knew of Ali Mubah's involvement. Correct, but that one particular account goes to, while there's not evidence beyond the Sewally Smart Shop account that I've mentioned as to the primary, the evidence was that Mr. He's not a member of that account. He's not, but that even more goes to the fact that he knew others were doing the same scheme that he was. When he went in to use the FoodPortless account, he's got a card in his hand that's got somebody else's picture on it, which is the same thing that he's doing when he's opening and joining fake accounts with fake identities. It goes to his overall knowledge of the scheme. We don't know whether that was a co-conspirator or not. We don't, your honor. These are the problems. Well, co-conspirators. Rather than make specific findings, these kinds of gaps, it seems to me, are why we have to vacate and send it back. This court, the government, is going to maintain, your honor, that the record fully supports the district court's loss determination. I want to point to a few more things in that regard. It was mentioned by Ms. Barron that the evidence, and it was argued at sentencing as well, the evidence that the government didn't have at trial, there's no denying that. But the government met its burden in all counts but two beyond a reasonable doubt. And then we relied on that evidence at sentencing, and the court found via preponderance that the same evidence that was presented also showed the reasonable foreseeability, the jointly undertaken activity, and therefore included the relevant conduct. Ms. Barron mentioned that we couldn't, part of the evidence that we didn't have was surveillance footage of two, Mr. Berry with a co-defendant at the same time. While we might not have had surveillance footage, your honors, Exhibit 705, which was the and other co-conspirators using the same credit cards, if we look at that exhibit, it shows that Mr. Berry was at certain Sam's Club locations at the same time as co-defendants. He's making purchases within minutes, two, three, four minutes, especially and particularly on October 30th and November 1st of 2019. While there may not be a photographic evidence, the timestamps show that he was at certain Sam's Club locations with his co-conspirators. And the keys to the crime here were those membership cards and the credit cards, your honors. And it had to be, in a scheme like this, it had to be reasonably foreseeable. When Mr. Berry is opening, joining, using fake Sam's Club memberships, using stolen credit cards and identities, that's precisely what the co-conspirators are doing. It had to be reasonably foreseeable to him that if he didn't have those keys to the crime, other people were going to be using those keys to the crimes. And that's exactly what happened. And that's actually true since he was the primary on at least a few cards that he knew that others were using? Yes, your honor. Not only was he the primary member on those accounts, he had the only card. And an interesting thing, specifically with respect to one of the accounts that he was a primary member of, the Enclave one-stop shop, your honor, he was the primary. He opened it using false information, fake tobacco license, fake identity. He had the only card. And then the Sewally Smart Shop, which he was a secondary and which we've talked about, your honors, Mr. Berry never, the government didn't have any evidence that Mr. Berry ever used either one of those accounts. He wasn't held accountable for any purchases under either one of those accounts. Yet he opened and joined, got himself a Sam's Club membership card with his picture, and yet he never used it. Why would he do that? Well, he did that because he knew co-defendants and co-conspirators were going to be using it. And that's exactly what happened. Is there, whenever there is a fraudulent access device used in a conspiracy, the district judge doesn't have to make an individualized determination as to the loss amount? No, your honor, no. The district, this court's precedent is clear that individualized findings need to be made. And if somebody goes in and they're getting a fraudulent card from somebody, you just said that they should anticipate that other people are doing the same thing, and therefore they should be held responsible for what everybody else in the conspiracy is doing. So how would the, what's the purpose then of the district judge even making an individualized determination? Well, that's just one of the factors here, your honor. It's not, I wasn't trying to suggest that that was the end-all, be-all inquiry. It's one factor here among many that the district court heard about. And it's not, the individualized findings are still required. I just want to be clear about that. But this court's precedent makes clear that if the record is a whole, and that's what I'm getting at, supports the loss amount determination, that it's due to be affirmed. Yes, your honor. Yes, your honor. And this court will look, as the district court is entitled to do, this court can look at the trial, unobjected to facts in the PSR, sentencing memos. This is a bit different from Pierre because there the district court basically didn't say anything. Here we have the district judge affirmatively saying the wrong thing. So isn't that, doesn't that make this case a little bit different from Pierre? It is different, but I don't know that that is a factor that should, that this court should vacate on. And I go back. Both here and in Pierre, the same failure to make the individualized finding about the scope, right? Yes, your honor. But it does seem to me that given what you conceded about the Dominick Tobacco Shop account and at least the food for less market account, it needs to be sent back. The record, I hear what your honor is saying. The record, though, I think overall shows enough to support the district court's loss amount determination. We also have the credit cards, of course, and Judge Kidd, to your earlier question and point about the loss, and I think you said, you know, something along the lines of on the hook for everything, and that language also appears in Appellant's brief. But I also just want to make the point that that's not what happened here. That's not what the government argued for, and that's not what the district court found. The loss amount was actually very narrowly tailored to, it wasn't all co-defendants or co-conspirators and all the Sam's Club memberships that Mr. Berry ever touched. It was about the credit cards. And if Mr. Berry used one of those credit cards and, again, passed it off to others, didn't hang on to it, that's the loss amount that he was held accountable for. So it was actually very narrowly tailored. And something also interesting about the credit cards, there's, you know, this. Ms. Barron made the point earlier that, and she does in the brief as well, that the district court, the government argued for obstruction enhancement, and the district court did not apply it. While true, if we look at the district court's statements at sentencing, the district court did not credit Mr. Berry's testimony. The district court did not believe Mr. Berry's testimony. So I just want to note that for the record as well. And there's also a lot of reliance on this co-defendant Bestman's statement. The court should know that Mr. Bestman's statement came first. Mr. Bestman was interviewed in January of 2022, and Mr. Berry had that ROI in discovery as he sat through the trial and as he took the stand. And it is just as likely, if not more likely, that Mr. Berry's story was made to look like Mr. Bestman's. And he was trying to corroborate this story that Mr. Bestman gave over a year earlier, not the other way around. Mr. Bestman's statement does not corroborate in any way Mr. Berry's testimony. And if there are no further questions, I will rest on the brief and ask the court to affirm. Thank you. Thank you, Your Honor. The government and I agree on one thing. Their loss amount is narrowly tailored. It doesn't include everything in this case. It's just narrowly tailored around the wrong things. And the question for this court is not... We would agree that the record evidence likely supports holding Berry accountable, at least for some of the loss caused by his co-conspirators, right? Well, it depends on what... If the evidence to support that is what Ms. Sanders cited here, I have to say no. And let me be specific. I'm not saying that Fernandez does not find Berry was the primary member on the Enclave One stock shop account, right? Fiala was the secondary member. Fernandez testified Berry was a primary member on the Sewanee smoke shop account. Diallo and Bestman were secondary members. So Berry necessarily visited Sam's Club with Diallo and Bestman to add them to those accounts. Diallo was also driving Berry's car when he was arrested, which further supports a connection between them, right? No, Your Honor. So what you just cited on being added to, that's from their first brief. They corrected that point in the second brief. There was no evidence, and I think Ms. Sanders admitted this, that like on Sewanee, there was only one member, and that was my client. They said in the first brief that these other people were added to those accounts. They corrected that. The other people used those membership cards, but they were never added to, so there's no evidence. As secondary members, and I would defer to Ms. I think she even admitted this in her statement, but that was the issue in the corrected brief. They used, the defendants used those other, and even Agent Fernandez's testimony corroborates that, that they used those cards. They were not added to those cards. So there's no evidence that my client would have had to go in with them to be added. As to the Diallo, That's what I wanted to address. And then I want to come back to the Diallo car issue after that, if the Court will allow. So that's Exhibit 705, which the government added, supplemented in the appendix. And specifically, Ms. Sanders pointed to October 30th. And so on October 30th, you do see my client in Sam's Club and then somebody else. We don't know who. That wasn't proven. Maybe it was one of the other five. I take it that everyone that's in here is one of the other five. We just don't know who. But here's the relevant point that Ms. Sanders didn't point out. They're using different cards, different access devices, different membership cards. So they're not passing anything. And so is it possible that they could have been in the same Sam's Club at the same time? Maybe. Does that mean they necessarily knew each other? When it's clear they're using different cards, absolutely not. I know that's the leap that the government wanted the district court and this court to make. But the preponderance standard is higher than that. Plausible does not mean preponderance. And that's the issue here, Your Honor, is that the government is putting forward a theory that is consistent with the facts. That doesn't make it. This is not like reviewing a jury's verdict where you have to construe the facts in a light most favorable to the verdict. That's not the standard here. It's does the preponderance of the evidence in the record support the loss amount. And here there are arguments on both sides that need to be made to a fact finder so that someone can make that call. No one's made that call. And I'd like to briefly address, while I still have a little bit of time, the issue of disparities. So, again, I recognize that people who go to trial are going to be punished differently. My client didn't get acceptance, nor should he have. And if the government wanted to argue for a middle or high-end sentence to reflect the fact that he went to trial, completely within their prerogative to do that. But what you don't get to do is manipulate the guidelines and how those are calculated for one defendant as opposed to the other. That is a sentencing disparity that is not warranted, that is not supported by law. And so if the guidelines are to mean anything, they are supposed to be the anchor by which we determine substantive reasonableness. And if there's going to be a variance, it has to be supported by the other defendants getting 5K credit. Maybe they're less culpable. Maybe there's some substantive reason to support that disparity, but it does not exist on this record. And for that reason, Your Honor, I ask that the sentence be reversed and remanded. Thank you, Ms. Vera. You are again court-appointed, and we are grateful for your acceptance of that appointment and for discharging your responsibility very well this morning.